IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JANE DOE (a fictitious name), | : |
| Plaintiff, | : |
| v. | :      C.A. No. S20C-05-025 RFS |
| | : |
| MASSAGE ENVY FRANCHISING, LLC | : |
| and | : |
| DDW ENTERPRISES, LLC | : |
| | : |
| and | : |
| SAVAD, LLC D/B/A | : |
| MASSAGE ENVY CHRISTIANA | : |
| | : |
| and | : |
| ALICIA NORRIS | : |
| | : |
| and | : |
| HAND AND STONE FRANCHISE CORPORATION | : |
| | : |
| and | : |
| GWS VENTURES, INC. | : |
| | : |
| and | : |
| JD WELLNESS, LLC | : |
| | : |
| and | : |
| GERALD L'HEUREUX, | : |
| Defendants. | : |

## ORDER

Submitted: 12/10/2020
Decided: 12/21/2020

Philip T. Edwards, Esq., 1011 Centre Rd., Suite 210 Wilmington, DE 19805 and V. Paul Bucci, II, Esq. and M. Stewart Ryan, Esq., 1435 Walnut Street, Suite 700 Philadelphia, PA 19102, Attorneys for Plaintiff.

1

Brian Cunningham, Esq., 405 N. King Street, Suite 800 Wilmington, DE 19801, Attorney for Defendant, Massage Envy Franchising, LLC.

## I. INTRODUCTION

Before the Court is Massage Envy Franchising, LLC's ("MEF") Motion to Dismiss. For the reasons that follow, MEF's Motion to Dismiss is **GRANTED**.

## II. FACTUAL AND PROCEDURAL HISTORY

MEF is an Arizona-based franchisor of Massage Envy branded franchisees located throughout the United States. On or about June 30, 2018, Jane Doe ("Plaintiff") checked into Massage Envy – Christiana (the "Franchise") for a massage. Prior to checking into the Franchise, Plaintiff created an online profile to book her appointment.

On May 23, 2018, Plaintiff accessed MEF's website to create a profile.[1] When creating a profile, Plaintiff was presented with the Terms of Use Agreement (the "Agreement"). To access the Agreement, Plaintiff was required to click on a hyperlink located next to a box with the sentence: "I agree and assent to the Terms of Use Agreement."[2] The words "Terms of Use Agreement" are underlined to reflect the hyperlink, which would take the client to a page displaying the entirety of the Agreement. In order to continue with the intake process, Plaintiff would need to check the box indicating she assented to the Agreement.

When the Agreement opened up, the below relevant text was located at the top of the page in bold and capitalized font:

> IMPORTANT NOTICE: THIS TERMS OF USE AGREEMENT
> ("AGREEMENT") CONTAINS A BINDING ARBITRATION PROVISION
> AND A CLASS ACTION WAIVER. PLEASE READ IT CAREFULLY
> BECAUSE IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE
> BINDING INDIVIDUAL ARBITRATION SECTION BELOW.[3]

---

[1] Def.'s Mot. Ex. A & Ex. B.
[2] *Id* Ex. A-1.
[3] *Id* Ex. A-2.

2

Further down the Agreement, there is a section titled "BINDING INDIVIDUAL ARBITRATION." Following the title, the below text is provided in bold, capitalized font:

PLEASE READ THIS SECTION CAREFULLY-IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.[4]

The paragraphs following the above text provide that Plaintiff is agreeing to arbitrate disputes against MEF that arise out of or relate to services.[5] It further provides that "validity, enforceability, or scope" of the arbitration provision is to be decided by the arbitrator.[6] Plaintiff's profile was created prior to her in-office appointment.

On June 30, 2018, Plaintiff checked into the Franchise for her massage. It was that day Plaintiff alleges a Franchise employee sexually assaulted her. On May 21, 2020, Plaintiff filed her complaint in this Court seeking damages arising out of the alleged sexual assault. Plaintiff argues MEF failed to provide basic safety to clients and systematically and intentionally conspired and concealed the problem of massage therapists sexually assaulting customers.[7] Plaintiff puts forth multiple causes of actions against MEF: (1) Vicarious Liability; (2) Negligence; (3) Negligent Performance of Undertaking to Render Services; (4) Violation of Delaware Consumer Fraud Act 6 *Del. C.* § 2513; (5) Fraudulent Concealment; (6) Civil Conspiracy; (7) Negligent Infliction of Emotional Distress; and (8) Breach of Duty to Warn.

---

[4] *Id.*

[5] *Id.* The provision states:

> [A]ll Disputes between you and any ME Entity. The term "Disputes" is to be given the broadest possible meaning that will be enforced that means any dispute, claim, or controversy of any kind between you and any of the ME Entities that arise out of or in any way relate to . . . (4) any product or service provided by or purchased from an independently owned and operated Massage Envy® franchised location.. (5)this Agreement, including the validity, enforceability or scope of this Binding Individual Arbitration Section…, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.

[6] *Id.* The Agreement further provided that Plaintiff had the ability to opt out of the arbitration provision within 30 days; however, neither Plaintiff nor MEF claim Plaintiff opted out.

[7] Compl. ¶ 16.

On June 16, 2020, MEF filed the present motion to dismiss in favor of arbitration. MEF argues that Plaintiff, by creating a profile on the Massage Envy website, agreed and assented to arbitrate any and all claims against MEF, and the arbitrator, not this Court, has the power to determine whether Plaintiff's claims fall within the scope of the purported arbitration agreement.

## III. DISCUSSION

Superior Court Civil Rule 12(b)(6) provides that a defendant may bring a motion to dismiss if the claimant fails to state a claim upon which relief can be granted.[8] "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate."[9] The Agreement expressly lays out that the agreement to arbitrate is governed by the Federal Arbitration Act ("FAA").[10] Under the FAA, the Court may dismiss a complaint for lack of subject matter jurisdiction after determining (1) whether a valid and enforceable arbitration agreement exists and (2) whether the scope of that agreement covers the plaintiff's claims.[11]

The public policy of Delaware favors arbitration.[12] "Arbitration is the preferred mechanism for resolving disputes in this State and the court should 'ordinarily resolve any doubt as to arbitrability in favor of arbitration.'"[13] If Plaintiff agreed to arbitrate her claims, the Court must dismiss or stay the matter pending a decision by the arbitrator.

The Court must first determine whether a valid, enforceable arbitration agreement exists. Plaintiff argues she did not assent to the Agreement. Plaintiff contends the Agreement is an impermissible "browsewrap" agreement. Plaintiff further argues MEF cannot demonstrate she

---

[8] Super. Ct. Civ. R. 12.
[9] *NAMA Holdings, LLC*, 922 A.2d at 429 (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del.1999)).
[10] *Id.* Ex. A-2. (Delaware arbitration law mirrors federal law. *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *6 (Del. Super. Ct. July 30, 2013).
[11] *Dewey v. Amazon.com, Inc.*, 2019 WL 3384769, at *3 (Del. Super. Ct. July 25, 2019).
[12] *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998).
[13] *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *5 (Del. Super. Ct. July 30, 2013) (citing *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del.2002)).

4

checked the box assenting to the Agreement and the exhibits MEF provided are not the same screens presented to Plaintiff when she created her profile.[14]

MEF provides two declarations of MEF employees in support of their motion. MEF's Vice President, Corporate Counsel – Franchise Compliance, Justin Cryder ("Cryder"), provides the first declaration.[15] In a good-faith belief, Cryder identified Plaintiff. Cryder further declared:

> To complete the online profile creation process, consumers are required to provide contact information agree to the Agreement by clicking an electronic "check" immediately next to the sentence: "I agree and assent to the Terms of Use Agreement…." During the online profile creation process, the words 'Terms of Use Agreement' are underlining and are a contrasting color, indicating that "Terms of Use Agreement" was a hyperlink…[16]

Once a profile is created and assented to, the information is recorded by the MEF computer system. MEF's business records show on May 23, 2018, Plaintiff created a profile and assented to the Agreement by clicking on the check box.[17]

MEF's Senior Director of Digital Applications, Dennis Kozura ("Kozura"), provides the second declaration.[18] As the Cryder declaration provides, Kozura declares the hyperlink was in a form that Plaintiff could notice it was a hyperlink – underlined and in a different color.[19] Further, the box next to the sentence "I agree and assent to the Terms of Use Agreement" was required to be checked before moving on. Kozura, through MEF's computerized business records, confirms Plaintiff assented to the Agreement on May 23, 2018.[20]

---

[14] MEF admits the website presented to Plaintiff differed in font, size, and color; however, MEF contends the substantive information and content. Def.'s Mot. Ex. B.
[15] Def.'s Mot. Ex. A.
[16] *Id.*
[17] *Id.*
[18] *Id.* Ex. B.
[19] *Id.* Ex. B.
[20] *Id.*

5

MEF has provided a sample that the Court finds can be reasonably relied on, considering the declarations. What Plaintiff would have seen on the website is the same substantive information and content as MEF's Exhibit B-1, which displays the Agreement conspicuously.[21]

MEF and Plaintiff are at odds with the type of agreement Plaintiff was presented with. Therefore, the Court begins its analysis by determining whether the Plaintiff was presented with a valid enforceable "clickwrap" agreement. "A clickwrap agreement is an online agreement that requires a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed.'"[22] Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law.[23]

Plaintiff argues this is an impermissible "browsewrap" agreement. Plaintiff argues the agreement presented to her did not require the client to acknowledge the contents of the Agreement; rather, it merely provided a not sufficiently conspicuous link to the Agreement, which was located on a separate page. A "browsewrap" agreement "involve[s] a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink. Thus, a party gives ... assent simply by using the website."[24] Such agreements are generally unenforceable.

The Court looks to *Newell Rubbermaid Inc., v. Storm* in characterizing the agreement Plaintiff was presented with. In *Newell Rubbermaid,* the Chancery Court held that an agreement modifying an employee's post-employment rights was enforceable.[25] The court determined that

---

[21] *Id.* Ex. B-1.

[22] *Newell Rubbermaid Inc. v. Storm,* 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) (citing *Van Tassell v. United Mktg. Gp., LLC,* 795 F.Supp.2d 770, 790 (N.D.Ill.2011)).

[23] *Newell Rubbermaid,* 2014 WL 1266827, at *1.

[24] *Newell Rubbermaid,* 2014 WL 1266827, at *1 (citing *Van Tassell v. United Mktg. Gp., LLC,* 795 F.Supp.2d 770, 790 (N.D.Ill.2011)).

[25] *Newell Rubbermaid,* 2014 WL 1266827, at **6–7.

the agreement was a valid clickwrap agreement that required the defendant to affirmatively click a box next to a conspicuous sentence agreeing to the terms.[26] The requirement to check the box signifies the user's assent.

Here, Plaintiff was required to check a box to manifest her assent. Similar to the agreement before the *Newell* court, MEF's agreement was signaled by a hyperlink, which was underlined and in a different color font.[27] Further, Plaintiff manifested her assent by checking the box located next to the sentence "I agree and assent to the Terms of Use Agreement."[28] The profile could not have been completed without Plaintiff checking the box.[29]

Plaintiff argues the hyperlink – which takes the user to the Agreement – is not titled "Terms of Use Agreement," rather it is titled "Terms and Conditions." As soon as the Agreement is opened, the below is conspicuous and leads the document:

> IMPORTANT NOTICE: THIS TERMS OF USE AGREEMENT ("AGREEMENT") CONTAINS A BINDING ARBITRATION PROVISION AND A CLASS ACTION WAIVER. PLEASE READ IT CAREFULLY BECAUSE IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE BINDING INDIVIDUAL ARBITRATION SECTION BELOW.[30]

Had Plaintiff clicked on the hyperlink and opened the document, she would have been immediately put on notice of the arbitration provision. Although a different terminology is used on the Agreement, Plaintiff would have been aware that she was altering her rights if she had investigated what she was assenting to.

The Court finds a valid and enforceable arbitration agreement exists between MEF and Plaintiff. Once Plaintiff clicks on the hyperlink, Plaintiff is put on notice that she would be

---

[26] *Id.*
[27] Def.'s Mot. Ex. A and Ex. B.
[28] *Id.*
[29] *Id.*
[30] *Id* Ex. A-2.

altering her legal rights.[31] The arbitration provision itself is conspicuous, in bold, capitalized text.[32] The provision further instructs Plaintiff to read the section carefully.[33]

Plaintiff does not recall reading the Agreement, nor does she recall checking the box assenting to the Agreement. Failure to read or recall agreeing to the Agreement will not keep this case out of arbitration. The profile could not be completed until Plaintiff assented to the Agreement. Plaintiff's profile was created; therefore, the Court concludes Plaintiff checked the appropriate box. As the court in *Newell Rubbermaid* provided, Plaintiff should have investigated the terms to which she was agreeing.

Next, the Court must determine whether the scope of the Agreement covers Plaintiff's claims. MEF argues Plaintiff's assent to the Agreement included assenting to allowing the arbitrator to determine whether Plaintiff's claims fall within the scope of the Agreement. The Agreement states the "validity, enforceability, or scope" of the arbitration provision is to be decided by the arbitrator.[34] This statement is in bold and follows the bold capitalized text to "please read this section carefully...."

Parties can agree to arbitrate questions of "arbitrability."[35] "[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[36] The Agreement expressly provides that issues of arbitrability would also be subject to the arbitrator, providing:

> [A]ll Disputes between you and any ME Entity. The term "Disputes" is to be given the broadest possible meaning that will be enforced that means any dispute,

---

[31] *Id.* Ex. A-2.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010).
[36] *Behm v. Am. Int'l Grp., Inc.,* 2013 WL 3981663, at *6 (Del. Super. Ct. July 30, 2013) (citations omitted).

8

claim, or controversy of any kind between you and any of the ME Entities that arise out of or in any way relate to . . . (5)this Agreement, including the validity, enforceability or scope of this Binding Individual Arbitration Section..., whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.[37]

As discussed, Plaintiff assented to the Agreement by checking the box. Included in the arbitration provision, which this Court has determined to be conspicuous, was MEF's delegation of issues to an arbitrator. Had Plaintiff read the agreement she assented to, she would have been on notice of MEF's intent to have an arbitrator decide issues related to the Agreement. The Agreement is clear and unmistakable evidence of the parties' intent to delegate the issue of scope to the arbitrator; therefore, the arguments raised by Plaintiff are for the arbitrator.

Lastly, Plaintiff raises multiple arguments that the Agreement is invalid, including unconscionability and lack of consideration. Plaintiff's challenge "to the validity of an entire contract which contains an arbitration clause [is] for the arbitrator to decide."[38] Therefore, concluding Plaintiff assented to arbitration, the Court will allow the arbitrator to address Plaintiffs arguments.

---

[37] Def.'s Mot. Ex. A-2.

[38] *Gilmartin v. Whaley Royce, LLC*, 2017 WL 1162939, at *5 (Del. Ch. Mar. 28, 2017), adopted, (Del. Ch. 2017) (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)).

## V. CONCLUSION

Considering the foregoing, Defendant's Motion to Dismiss is granted without prejudice.

**IT IS SO ORDERED.**

Richard F. Stokes, Judge

cc: Prothonotary's Office
    Counsel of Record