ACHAIAN, INC., on behalf of itself and derivatively on behalf of Omniglow, LLC, Plaintiff,

v.

LEEMON FAMILY LLC, and Ira Leemon, Defendants,

and

Omniglow, LLC, Nominal Defendant.

Civil Action No. 6261–CS.

Court of Chancery of Delaware.

Submitted: May 23, 2011.
Decided: Aug. 9, 2011.

Herbert W. Mondros, Esquire, Stephanie Noble Tickle, Esquire, Margolis Edelstein, Wilmington, Delaware; Steven N. Leitess, Esquire, Gordon S. Young, Esquire, Leitess Leitess Friedberg + Fedder PC, Baltimore, Maryland, Attorneys for Plaintiff.

William E. Manning, Esquire, James D. Taylor, Jr., Esquire, Charles T. Williams, III, Esquire, Michael J. Farnan, Esquire, Saul Ewing LLP, Wilmington, Delaware, Attorneys for Defendants.

OPINION

STRINE, Chancellor.

## I. *Introduction*

Omniglow, LLC is a Delaware limited liability company engaged in the manufacture of chemiluminescent novelty items such as "glowsticks." When it was founded in 2005, Omniglow had a sole "Member," its "Parent" corporation.[1] As part of a planned spin-off in 2006, Parent sold Omniglow to three business entities. That resulted in Omniglow having three Members,[2] each owning the following Membership "Interests": (i) 50% were owned by the defendant Leemon Family LLC, a New York limited liability company controlled by its managing member, the individual defendant Ira Leemon (together, "Leemon"); (ii) 30% were owned by the non-party Randye M. Holland and Stanley M. Holland Trust, a revocable inter vivos trust controlled by non-parties Stanley and Randye Holland as trustees ("Holland"); and (iii) 20% were owned by the plaintiff Achaian, Inc., a Nevada corporation wholly owned by non-party William A. Heriot ("Achaian").[3]

For two years, Holland and Leemon, together comprising 80% of the Interests, managed Omniglow's business with Achaian taking a passive role as an investor. In 2008, however, Leemon allegedly took sole control of Omniglow over the objection of both Achaian and Holland, and in contravention of Omniglow's "LLC Agreement" that vests managerial authority in the Members in proportion to their respective

1. The Parent was Omniglow Corporation. Compl. ¶ 5.

2. In carrying out the sale, Parent waived the provision in Omniglow's limited liability company agreement, to be discussed below, that bars the admission of a new Member absent the written consent of the "Member," which at the time was just Parent. Compl. Ex. A ("Distribution and Assignment of Membership Interest" (January 26, 2006)) at 1.

3. *Id.* Although some of the actions alleged to have been taken were taken by individuals, for the sake of simplicity I group the individuals with their respective controlled entities.

Interests.[4] Holland, fed up with controversy, purported to transfer and assign its entire 30% Interest to Achaian in a January 25, 2010 "Purchase Agreement."[5] Achaian then filed this suit on March 10, 2011, claiming that it and Leemon are now deadlocked, 50/50, as to the management of Omniglow and therefore an order of dissolution is warranted under 6 *Del. C.* § 18–802 because it is no longer "reasonably practicable to carry on [Omniglow's] business in conformity with [Omniglow's] [LLC] [A]greement."[6] Leemon has moved to dismiss the complaint under Rule 12(b)(6), arguing that Holland's assignment was only effective to give Achaian an additional 30% economic interest in Omniglow. Specifically, Leemon says that in order for Achaian to have received a 30% *Membership* Interest in Omniglow, the LLC Agreement required Leemon's consent to the assignment because, in its view, Achaian was in effect being readmitted as a Member with respect to its newly acquired 30% Interest.

This case therefore presents a single question of law: may one member of a Delaware limited liability company assign its entire membership interest, including that interest's voting rights, to another existing member, notwithstanding the fact that the limited liability company agreement requires the affirmative consent of all of the members upon the admission of a new member, or, must the existing member assignee be readmitted with respect to each additional interest it acquires after its initial admission as a member? In this opinion, I find that, consistent with the Delaware Limited Liability Company Act, an enabling statute whose primary function is to fill gaps, if any, in a limited liability company agreement, the answer to that question depends in the first instance on the specific provisions governing the transferability of Interests in Omniglow's LLC Agreement. When Omniglow's LLC Agreement is read as a whole, as it must be,[7] it allows an existing Member to transfer its entire Membership Interest, including voting rights, to another existing Member without obtaining the other Members' consent. Thus, Holland's assignment of its 30% Interest to an existing Member, Achaian, was effective to vest all of the rights associated with that Interest in Achaian, and Omniglow now has two coequal 50% Members.

## II. *The Relevant Provisions Of The LLC Agreement And The Parties' Competing Interpretations*

This motion presents a discrete question of law. Both parties believe that their dispute must be determined by reference to the terms of the applicable statute, the Delaware Limited Liability Company Act, and Omniglow's LLC Agreement.[8] Neither argues that there is any relevant parol evidence bearing on this dispute, especially because neither Achaian nor Leemon was involved in drafting the original LLC Agreement.[9]

■ To resolve this dispute, it is useful to start with what is now a mundane notion, which is that under the Act, the par-

---

**4.** Compl. Ex. A ("Limited Liability Company Agreement of ROG, LLC" (October 26, 2005)) § 4.1 ("LLC Agreement"). Omniglow's original name was ROG, LLC. Compl. ¶ 8.

**5.** Compl. Ex. B ("Membership Interest Purchase Agreement and Mutual Release" (January 25, 2010)) ("Purchase Agreement").

**6.** 6 *Del. C.* § 18–802.

**7.** *Kuhn Const., Inc. v. Diamond State Port Corp.,* 990 A.2d 393, 396–97 (Del.2010) ("We will read a contract as a whole and we will give each provision and term effect....").

**8.** Tr. at 3 (Counsel for Leemon); *id.* at 18 (Counsel for Achaian).

**9.** Compl. ¶ 6.

ties to an LLC agreement have substantial authority to shape their own affairs and that in general,[10] any conflict between the provisions of the Act and an LLC agreement will be resolved in favor of the LLC agreement.[11]

That principle applies here. As Leemon stresses, the default provision of the Act dealing with the transfer of interests in an LLC states:

A limited liability company interest is assignable in whole or in part except as provided in a limited liability company agreement. The assignee of a member's limited liability company interest shall have no right to participate in the management of the business and affairs of a limited liability company *except as provided in a limited liability company agreement . . . . Unless otherwise provided in a limited liability company agreement,* [a]n assignment of a limited liability company interest does not entitle the assignee to become or to exercise any rights or powers of a member [and instead only] entitles the assignee to

---

**10.** *See Elf Atochem N. Am., Inc. v. Jaffari,* 727 A.2d 286, 290 (Del.1999) (quoting JAMES D. COX ET AL., CORPORATIONS § 1.12 at 1.37–.38 (1999)) ("The Act can be characterized as a 'flexible statute' because it generally permits members to engage in private ordering [in the LLC agreement] with substantial freedom of contract to govern their relationship, provided they do not contravene any mandatory provisions of the Act."); *see also* 2 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 20.3 at 20–3 (2009) ("BALOTTI & FINKELSTEIN") ("The Act's basic approach . . . [is] to furnish answers only in situations in which the members have not made provision in their limited liability company agreement."); ROBERT L. SYMONDS, JR. & MATTHEW J. O'TOOLE, SYMONDS & O'TOOLE ON DELAWARE LIMITED LIABILITY COMPANIES § 1.03[A][2] at 1–15 (2007) ("SYMONDS & O'TOOLE") ("As a safeguard to its essentially contract-based approach, the [Act] sets forth a number of 'default rules' . . . [that] cover a variety of potential omissions in the limited liability company agreement."). Because "the LLC Act was based upon the Delaware Revised Uniform Limited Partnership Act . . . [and] [o]verarching principles reflected in both of the statutes are, in many material respects, identical," "it is logical to conclude that, except where an analogy fails due to a fundamental difference between a Delaware limited partnership and an LLC . . ., authorities decided under the [Limited Partnership] Act should be relevant in interpreting the LLC Act and in dealing with issues relating to LLCs." MARTIN I. LUBAROFF & PAUL M. ALTMAN, DELAWARE LIMITED PARTNERSHIPS § 13.1.2 at 13–2 (2010) ("LUBAROFF & ALTMAN"); 2 BALOTTI & FINKELSTEIN §§ 20.1, 20.3 at 20–2, 20–3; *see also Elf,* 727 A.2d at 290–91 (ob-

serving that because "[t]he Delaware [LLC] Act has been modeled on the popular Delaware LP Act[,] . . . its architecture and much of its wording is almost identical to that of the Delaware LP Act," and that as a result "observation[s] relating to limited partnerships appl[y] as well to limited liability companies. . . ."). Like the LLC Act, the LP Act is an enabling statute whose default rules are designed to fill gaps in the limited partnership agreement. LUBAROFF & ALTMAN § 1.2 at 1–3 ("The [Limited Partnership] Act's basic approach is to permit partners to have the broadest possible discretion in drafting their partnership agreements and to furnish answers only in situations where the partners have not expressly made provision in their partnership agreement.") (citing various provisions of the Act).

**11.** *See* SYMONDS & O'TOOLE § 1.03[A][2] at 1–15 ("[e]ach default rule [in the Act] is a statutory provision that governs *only in the absence of an agreement among the members covering the particular point.* If the limited liability company agreement provides otherwise regarding the relevant subject matter, *the statutory provision does not control.*") (emphasis added); 2 BALOTTI & FINKELSTEIN § 20.3 at 20–3 ("Many of the Act's most fundamental provisions are expressly made subject to modification in a limited liability company agreement.") (citing various provisions of the Act); LUBAROFF & ALTMAN § 13.1.2 at 13–2 ("[The Act] expressly recognizes that provisions of [the Act] are subject to modification in . . . a limited liability company agreement. In doing so, [the Act] use[s] the . . . formulation of 'unless otherwise provided in a limited liability company agreement'. . . .").

share in such profits and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned.... [12]

Likewise, the Act provides that an assignee of a limited liability company interest

"is admitted as a member of the limited liability company ... as provided in § 18–704(a) of this title [13] and at the time provided in and upon compliance with the limited liability company agreement...." [14]

■ Thus, it is clear that the default rule under the Act is that an assignment of

**12.** 6 *Del. C.* § 18–702(a), (b)(2) (emphasis added).

**13.** 6 *Del. C.* § 18–704(a) provides that an assignee of a limited liability company interest "may become a member ... [a]s provided in the limited liability company agreement; *or [u]nless otherwise provided in the limited liability company agreement,* upon the affirmative vote or written consent of all of the members of the limited liability company." (emphasis added).

**14.** 6 *Del. C.* § 18–301(b)(2). There are likely two motivations for the statutory default rules in §§ 18–702, 18–704(a), and 18–301 concerning the assignment of a limited liability company interest and the assignee's possible (and subsequent) admission as a member of the LLC. The first is tax-related. *See generally* Daniel S. Kleinberger, *Two Decades of "Alternative Entities": From Tax Rationalization Through Alphabet Soup To Contract As Deity,* 14 FORDHAM J. CORP. & FIN. L. 445, 447–54 (2009) (observing that the emergence of LLCs and statutory rules, sometimes mandatory, that prevented the free alienability of LLC interests was part of states' early attempts "to create an entity that, as a matter of tax law, is classified as a partnership with each owner treated as a partner, but whose owners are shielded by state law from automatic personal liability," and that such default statutory rules have now been rendered largely unnecessary after the United States Treasury Department adopted the "check-the-box" federal income tax classification regime in 1997, under which an unincorporated entity, like a limited liability company, "is taxed as a partnership if it has two or more owners, or is disregarded for income tax purposes if it has one owner—unless it elects to be taxed as a corporation by 'checking the box.' "); *see also Elf,* 727 A.2d at 286 ("The wording and architecture of the Act is ... designed to achieve what is seemingly a simple concept—to permit persons or entities ('members') to join together in an

environment of private ordering to form and operate the enterprise under an LLC agreement with tax benefits akin to a partnership and limited liability akin to the corporate form."); LARRY E. RIBSTEIN AND ROBERT R. KEATINGE, RIBSTEIN AND KEATINGE ON LIMITED LIABILITY COMPANIES § 7:4 (2011) ("RIBSTEIN & KEATINGE") (observing that "[m]andatory provisions [in LLC statutes] are no longer necessary to ensure that the firm will lack the corporate tax characteristic of free transferability in light of the recent elimination of these classification features in the 'check-the-box' tax classification rule," but noting that "while more LLCs may come to adopt corporate-type transferability, it seems unlikely that LLC statutes will eliminate restrictions on transfer of management rights *as a default rule* given the closely held nature of most LLCs.") (emphasis added). Omniglow's LLC Agreement itself recognizes the desirability of partnership tax treatment. *E.g.,* LLC Agreement § 7.1 ("If at any time [a transfer of an Interest] shall cause the Company to have more than one Member, then this Agreement shall be appropriately amended to reflect the fact that [Omniglow] will then be treated as a partnership for purposes of the [Internal Revenue] Code [of 1986]."). The second reason for the default rules in the Act regarding the transferability of interests may rest on the notion that one generally is entitled to select his own business associates in a closely held enterprise, like an LLC. *E.g.,* 68 C.J.S. *Partnership* § 1 (2011) ("A 'partnership' has been defined as a contractual relationship or a *voluntary association of two or more competent persons* to place their money, effects, labor, and skill or some or all of them in lawful commerce or business ....") (emphasis added); 46 AM.JUR.2D § 1 (2011) ("[A] joint venture is an association of persons *with the intent* ... to engage in and carry out a single business venture for joint profit."); *cf. Milford Power Co., LLC v. PDC Milford Power, LLC,* 866 A.2d 738, 760 (Del. Ch.2004) (observing that the LLC Act's de-

an LLC interest, by itself, does not entitle the assignee to become a member of the LLC; rather, an assignee only receives the assigning member's economic interest in the LLC to the extent assigned. It is equally clear, however, that the default rule may be displaced by the provisions of an LLC agreement itself and that in the event of a conflict, the LLC agreement prevails.[15]

Here, Omniglow's LLC Agreement does contain specific provisions bearing on Interests in Omniglow and their transferability, namely §§ 7.1 and 7.2. In deciding the legal question surfaced by Leemon's motion to dismiss,[16] therefore, I must first look to those provisions. If the LLC Agreement allowed Holland to transfer and assign the voting power associated with its Membership Interest to Achaian, that ends the matter notwithstanding that

the default provisions in the Act, if applicable, might lead to a different result.

For starters, Omniglow's LLC Agreement defines a Member's Interest as meaning "the *entire ownership interest* of the Member in [Omniglow]." [17] Two related sections of the LLC Agreement then deal specifically with the transfer of Interests. The first, § 7.1, allows a Member to transfer all or part of its Interest to any "Person," [18] at any time:

> 7.1. *Transfer of Interest.*[19] *[A] Member may transfer all or any portion of its Interest in [Omniglow] to any Person at any time.* If at any time such a transfer shall cause [Omniglow] to have more than one Member, then this [LLC] Agreement shall be appropriately amended to reflect the fact that [Omniglow] will then be treated as

---

fault rules that draw a distinction between an LLC member's economic rights which are freely transferable and those aspects of membership, such as managerial rights, which are not freely transferable, "recognize[] that it is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent."); *Elf,* 727 A.2d at 286.

**15.** *Elf,* 727 A.2d at 291; 2 BALOTTI & FINKELSTEIN § 20.3 at 20–3; SYMONDS & O'TOOLE § 1.03[A][2] at 1–15; LUBAROFF & ALTMAN §§ 1.2 at 1–3, 13.12 at 13–2; *see also Arvida/JMB Partners, L.P. v. Vanderbilt Income and Growth Assocs., L.L.C.,* 1997 WL 294440, at *2 (Del.Ch. May 23, 1997) (noting that where the limited partnership agreement speaks to the issue of whether an assignment of an interest confers a voting interest in a limited partnership, the limited partnership agreement's unambiguous provisions control); *Monterey Investments, Inc. v. HealthCare Properties, L.P.,* 1997 WL 367038, at *1 (Del.Ch. June 26, 1997) ("I conclude that when the limited partnership agreement clearly distinguishes between, and delineates the requirements and procedures for, limited partner status as opposed to unit holder status, ... the status of the purchaser will be

determined by the limited partnership agreement.").

**16.** *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del. 1992) (citing *Aetna Cas. and Sur. Co. v. Kenner,* 570 A.2d 1172, 1174 (Del.1990)) ("The proper construction of any contract ... is purely a question of law."); *Allied Capital Corp. v. GC–Sun Holdings, L.P.,* 910 A.2d 1020, 1030 (Del.Ch.2006) (observing that because issues of contractual interpretation are questions of law, "a motion to dismiss is a proper framework for determining the meaning of contract language.").

**17.** LLC Agreement art. I (emphasis added).

**18.** The LLC Agreement defines "Person" as meaning "any natural person, partnership, joint venture, association, corporation, limited liability company, trust or other entity." *Id.*

**19.** "The titles of the Articles and the headings of the Sections of this [LLC] Agreement are for convenience of reference only, and are not to be considered in constructing the terms and provisions of this [LLC] Agreement." LLC Agreement § 10.5.

a partnership for purposes of the [Internal Revenue] Code [of 1986].[20]

Section 7.1's permissive grant of free transferability, however, is subject to the express restriction contained in § 7.2, which provides:

> 7.2. *Admission of New Members. No Person shall be admitted as a Member of [Omniglow]* after the date of this [LLC] Agreement *without the written consent of the Member* and delivery to [Omniglow] of a written acknowledgement (in form and substance satisfactory to the Member) of the rights and obligations of this [LLC] Agreement and [an] agreement [to] be bound hereunder.[21]

Certain undisputed facts are also relevant to decide the current motion. The parties agree that each of Leemon, Achaian, and Holland were admitted as Members in 2006.[22] The parties also agree that even though § 7.1 says that the LLC Agreement "shall be appropriately amended" in the event that Omniglow came to have more than one Member,[23] there was never any such amendment.[24] Notably, the parties also agree that despite the failure to amend the LLC Agreement, the reference in § 7.2 to the "written consent of the Member" must be read as now meaning "Members" affording any Member the right to object to the admission of a Person as a new Member.[25]

From these undisputed facts, the key contractual provisions in the LLC Agreement, and the default provisions of the Act, the parties draw starkly different conclusions.

For its part, Leemon argues that none of the provisions in the LLC Agreement clearly reverse the default rule under the Act, which is that "[a]n assignment of a limited liability company interest does not entitle the assignee to become a member or to exercise any rights or powers of a member," and instead only entitles the assignee to the economic interest of the assigning member.[26] Because, in Leemon's view, the LLC Agreement does not plainly provide that the assignee of an Interest will receive the voting rights along with the economic interest, Achaian only received the economic interest associated with Holland's 30% Interest and thus possesses only the original 20% voting power it received from Parent.

Alternatively, Leemon argues that the LLC Agreement itself unambiguously distinguishes between the transferability of a Member's economic interest (i.e., the right to share in Omniglow's profits, losses and other distributions) and that Member's voting rights (i.e., the right to manage). That is, Leemon says that although § 7.1 allows a Member to freely transfer its economic interest in Omniglow, § 7.2

---

20. LLC Agreement § 7.1 (italicized emphasis added).

21. *Id.* § 7.2 (italicized emphasis added).

22. Tr. at 4 (Counsel for Leemon); Def. Op. Br. at 4; Tr. at 25 (Counsel for Achaian).

23. LLC Agreement § 7.1.

24. *Achaian, Inc. v. Leemon Family, LLC*, C.A. No. 6261–CS, at 11, 13, 14, 21 (Del. Ch. Mar. 28, 2011) (TRANSCRIPT) (Counsel for Leemon, Achaian); *see also* Compl. ¶ 8 ("The LLC Agreement was not, and has not been, amended.").

25. *Achaian, Inc. v. Leemon Family, LLC*, C.A. No. 6261–CS, at 11, 13, 14, 21 (Del. Ch. Mar. 28, 2011) (TRANSCRIPT) (Counsel for Leemon, Achaian); *see also* Compl. ¶ 8.

26. Def. Op. Br. at 9 (quoting 6 Del. C. § 18–702(b); citing *Lusk v. Elliott*, 1999 WL 644739, at *2 (Del.Ch. Aug. 13, 1999)).

makes plain that a Member's voting rights can only be transferred with the express written consent of the existing Members. Were it otherwise, argues Leemon, and a Member was allowed to transfer *both* his economic *and* voting interest under § 7.1 without first obtaining the consent of Omniglow's other Members, § 7.2's prohibition against the admission of a new Member without the written consent of existing Members would be "superfluous." [27] To avoid that result, Leemon says that § 7.2 applies to transfers or assignments of an Interest to existing Members, like Achaian. That is, Leemon suggests that although Achaian was "admitted as a Member" with respect to its original 20% Interest, § 7.2 requires Leemon's written consent in order for Achaian to have been "admitted as a Member" with respect to the additional 30% Interest it acquired from Holland.[28]

Achaian, for its part, admits that if Leemon is correct that the Act's default provisions it cites govern the transfer made by Holland to Achaian in the Purchase Agreement, "it is possible that the Court might find that Achaian did not acquire Holland's voting rights and does not hold a fifty percent full [I]nterest." [29] But, says Achaian, the LLC Agreement's specific provisions bearing on transferability trump the Act's default rules and permitted Holland to assign its voting rights to another existing Member, like Achaian. To that end, Achaian first points to the LLC Agreement's broad definition of Interest, which means "the *entire ownership interest* of the Member in [Omniglow]." [30]

Achaian says that because § 7.1 allows a "Member [to] transfer all or any part of its Interest to any Person at any time," Holland was free to transfer its "entire ownership [I]nterest," including that Interest's voting rights, to Achaian in the Purchase Agreement.[31] What's more, says Achaian, § 7.2 is far from superfluous, as Leemon contends. Instead, § 7.2 has an important role to play when a Member wishes to assign his Membership Interest to a "Person" who is not already "admitted as a Member." [32] When a Person is already "admitted as a Member," Achaian says that § 7.2 has no relevance, and a Member need not be readmitted as to each subsequent Interest it acquires.[33]

### III. *Leemon's Motion To Dismiss Is Denied*

▮ For the following reasons, I conclude that Achaian has the better of the argument. When read as a whole, as it must be,[34] the LLC Agreement provides that all of the rights accompanying an Interest—including the voting rights—in Omniglow may be transferred to an already existing Member of Omniglow without the written consent of the other Members. Read in complete context, the LLC Agreement makes Interests in Omniglow freely transferable subject only to a limited proviso that requires the written consent of the existing Members in order for a transfer to confer the status of Member on a Person, who at the time of the transfer was not already a Member. Because Achaian was already a Member at the time of the Purchase Agreement and nothing in

27. *Id.* at 10.

28. *Id.* at 10–11.

29. Pl. Ans. Br. at 21 n. 9.

30. *Id.* at 20 (quoting LLC Agreement art. I) (emphasis added).

31. *Id.* at 18 (quoting LLC Agreement § 7.1).

32. LLC Agreement § 7.2.

33. Pl. Ans. Br. at 19–20.

34. *Kuhn,* 990 A.2d at 396–97.

the LLC Agreement requires that it be readmitted as a Member with respect to each additional Interest it acquires in Omniglow, it was entitled to receive the "entire ownership interest" owned by Holland, including that Interest's corresponding voting rights.[35]

I now explain that reasoning in more detail.

I start by noting that Achaian places substantial weight on the LLC Agreement's definition of Interest—"the entire ownership interest of the Member in [Omniglow]." [36] Although it might be read as a way to ensure that partial positions can be transferred without saying anything about whether the Interest transferred included voting rights,[37] the fact that § 7.1 already permits a Member to transfer "all or any portion of its Interest" casts doubt on that reading because that reading renders the LLC Agreement's specific definition of Interest unnecessary and superfluous.[38] That is, if "entire," as used to describe the

extent of a Member's "ownership interest" in Omniglow serves only to confirm that a Member can, under § 7.1, transfer "all or any portion of its Interest" in the sense that a 60% Member may transfer any percentage up to and including its full 60% Interest, but does not speak at all as to what rights are included in that 60% Interest, the two provisions of the LLC Agreement would in effect be saying the same thing. It is instead preferable to accord the specific definition of Interest in the LLC Agreement independent meaning and significance.[39]

In that vein, given that the term "entire" is used only once in the LLC Act, in a vastly different context,[40] and is not a statutorily defined term, it is also reasonably susceptible to a reading, as Achaian urges, that is consistent with its plain meaning.[41] Under its plain meaning, entire would mean what it ordinarily does, as "[h]aving no part excluded or left out; [the] whole." [42] It is in this sense that Achaian

---

**35.** LLC Agreement art. I.

**36.** *Id.*

**37.** In fact, that reading is buttressed by a default provision of the Act, 6 *Del. C.* § 18–702(a), which provides that "[a] limited liability company interest is assignable *in whole or in part* except as provided in a limited liability company agreement," but as noted, goes on to provide that unless the limited liability company agreement provides otherwise, such an assignment shall not include "the right to participate in the management of the [LLC's] business...." 6 Del. C. § 18–702(a) (emphasis added).

**38.** *NAMA Holdings, LLC v. World Market Ctr. Venture, LLC,* 948 A.2d 411, 419 (Del.Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.") (citing *Majkowski v. Am. Imaging Mgmt. Serv.,* 913 A.2d 572, 588 (Del.Ch.2006)).

**39.** *Id.*

**40.** The only time the word "entire" or any form of it is found in the Act is in the section dealing with corrections to an LLC certificate of formation. 6 Del. C. § 18–211 ("The corrected certificate shall be specifically designated as such in its heading, shall specify the inaccuracy or defect to be corrected and shall set forth the *entire* certificate in corrected form.") (emphasis added).

**41.** *See, e.g., Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 738 (Del.2006) ("Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.") (citations omitted).

**42.** THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 597 (4th ed. 2000); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 758 (G. & C. Merriam Company 1976) (defining entire to mean "with no element or part excepted: whole, complete...."); BLACK'S LAW DICTIONARY 477 (5th ed. 1979) (defining entire to mean "[w]hole; without division, separation, or

claims that "entire" must mean that a Member, like Holland, can transfer under § 7.1 "all or any portion of its Interest," i.e., all or any portion of its *entire ownership interest . . .* in [Omniglow]," [43] including the Member's voting rights.[44] That this is what entire is best read as meaning, however, need not be determined in isolation, and in candor only becomes clear and unambiguous when read in full contractual context.[45]

To that point, it is only when the second sentence of § 7.1 and § 7.2 are considered that the LLC Agreement's broad definition of Interest emerges as unambiguously including all aspects of Membership in Omniglow, including managerial voting rights. The second sentence of § 7.1 provides that "[i]f at any time *such a transfer shall cause [Omniglow] to have more than one Member,* then this [LLC] Agreement shall be appropriately amended to reflect the fact that [Omniglow] will then be treated as a partnership for purposes of the [Internal Revenue] Code [of 1986]." [46] The second sentence of § 7.1 makes clear that a Member's Interest—i.e., its "entire ownership interest . . . in [Omniglow]" [47]— includes every aspect of a Member's Interest, including the portion that confers the status of Member, in whom, under § 4.1 of the LLC Agreement, managerial authority is vested. If it were otherwise, and an Interest in Omniglow represented *only* a Member's economic interest, as Leemon argues, the second sentence of § 7.1 would

seem to be unnecessary because in that case, an existing Member could not transfer or assign the voting rights included in its Interest to another Person such that as a result of such transfer or assignment, that Person could become a Member. In light of well settled principles of contract interpretation in Delaware,[48] the reading proffered by Leemon would tend to render the second sentence of § 7.1, to phrase it in a word favored by Leemon, superfluous.

Of course, the fact that § 7.1 seems to permit the free transfer of the entire Interest, including that Interest's associated voting rights, does not end the inquiry. Instead, I must look at what effect the section of the LLC Agreement addressing the admission of Members has, keeping in mind that the Act affords maximum contractual flexibility to provide in an LLC agreement the precise mechanism by which an assignee of a limited liability company interest may become a member.[49] As § 7.2 of the LLC Agreement provides in this case, "[n]o Person shall be admitted as a Member of [Omniglow] . . . without the written consent of the Member[s]. . . ." [50] As noted, Leemon does not contest the fact that Achaian, like Leemon, was admitted as a Member of Omniglow when Parent assigned and sold all of Omniglow's Interests to Leemon, Holland, and Achaian in 2006.[51] Instead, Leemon focuses on the specific 30% Interest that was transferred to Achaian under the Purchase

diminution; unmingled; complete in all its parts. . . .").

43. LLC Agreement art. I (emphasis added).

44. Pl. Ans. Br. at 20, 21, 24, 28.

45. *Kuhn,* 990 A.2d at 396–97.

46. LLC Agreement § 7.1 (emphasis added).

47. *Id.* art. I.

48. *Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1159 (Del.2010) ("We will not read a contract to render a provision or term 'meaningless or illusory.' ") (citations omitted).

49. 6 Del. C. § 18–704(a)(1).

50. LLC Agreement § 7.2 (emphasis added).

51. *Achaian, Inc. v. Leemon Family, LLC,* C.A. No. 6261–CS, at 21 (Del. Ch. Mar. 28, 2011) (TRANSCRIPT) (Counsel for Leemon).

Agreement and argues that "Achaian has not been admitted as a substituted [M]ember with respect to the 30% Interest, as provided by Section 7.2 of the LLC Agreement."[52]

But nothing in the text of § 7.2 suggests that once a Person has been admitted as a Member, she must be admitted again in order to acquire additional voting rights when she acquires additional Interests in Omniglow. The reason for § 7.2's check on § 7.1's free grant of transferability is most naturally read as a manifestation of the unremarkable idea that one gets to choose one's own business partners (or in the case of an LLC, one's co-members).[53] Leemon's argument relies on a very thinly sliced version of that, which is that once one chooses his initial co-members, one continues to hold a veto over how much additional voting power they may acquire. That is a strained extension of the traditional idea underlying partnerships and limited liability companies, and is not supported rationally by the LLC Agreement's text or by the context.

As it was, Leemon had already agreed in 2006 to become partners (or more properly, co-members) with Achaian and Holland in Omniglow's business. Thus, Leemon, as a 50% Interest holder, knew that Achaian and Holland could have voted together at any time to stymie Leemon from acting unilaterally. Leemon responds, however, that the LLC Agreement makes sure that if Holland and Achaian agreed to a transfer, in whatever direction, that vested all the voting power in one of them, the transferee had to be admitted as a Member for a second time—the first time being in 2006 when Parent sold its Interests to both Achaian, Holland and Leemon and approved their Membership.

The problem for Leemon is that nothing in the LLC Agreement supports Leemon's reading of it that would require an already admitted Member, like Achaian, to be become once, twice (or even three times) a Member each and every time that Member acquires an additional block of Interests.[54] By its plain terms, § 7.2 is directed at, and applies only to, a *"Person"* who is not yet "admitted as a Member."[55] Because Ach-

52. Def. Op. Br. at 11.

53. 68 C.J.S. *Partnership* § 1 (2011); 46 Am. Jur.2d § 1 (2011); *cf. Milford Power Co.*, 866 A.2d at 760; *Elf*, 727 A.2d at 286.

54. *See* Commodores, *Three Times a Lady*, on Natural High (Motown Records 1978) ("You're once, twice, three times a lady/And I love you....").

55. LLC Agreement § 7.2 (emphasis added). This is in stark contrast to the provisions of a materially different LLC agreement considered in a case cited by Leemon from outside this jurisdiction, *Ault v. Brady*, 37 Fed. Appx. 222 (8th Cir.2002) (applying Arkansas law). Importantly, unlike § 7.2 that expressly cabins its reach to "Persons" who are not "admitted as a Member," the applicable provision in the *Ault* case provided a blanket restriction on the transfer of a membership interest's attendant voting rights:

> *No member* shall sell, assign, transfer, pledge or encumber any interest in the Company without the prior written consent of the Manager and the other Members. *Any person* acquiring rights with respect to any interest in the Company ... *shall not be deemed a substituted Member* and shall be restricted to the right to receive any distributions made with respect to such interest. *Ault*, 37 Fed.Appx. at 225 (emphasis added).

In holding that an already existing member received only the economic interest associated with the transferred interest, the Eighth Circuit observed that the above-quoted provision, unlike § 7.2 of the LLC Agreement at issue in this case, "does not expressly limit transfers covered by the provision to only non-member transfer[ees]. Instead, [it] states that *no* transfers shall be made without the consent of the members regardless of to whom the transfer is made, [and that the clause] applies to 'any person' acquiring

aian was already admitted as a Member at the time of Holland's 2010 transfer, § 7.2 has no application.[56] Nor has Leemon cited anything in the LLC Act, the Uniform LLC Act, or learned commentaries and treatises on alternative entities suggesting that such a serial admission scheme is standard practice. To the contrary, the Delaware LLC Act seems to contemplate a singular admission governed by the specific terms of the LLC agreement, providing that "[a]n assignee of a limited liability company interest *may become a member ... as provided in the limited liability company agreement.*"[57] To that point, Leemon's argument conflicts with the LLC Agreement's definition of a Member's Interest in Omniglow. That is, if § 7.2 requires, as Leemon argues, that Achaian be admitted as two Members, one with respect to each block of Interests it owns, the LLC Agreement's definition of Interest—"the *entire* ownership interest of *the Member* in [Omniglow]"—would make scant sense because in that case, a Member's Interest would not be its entire ownership interest in Omniglow, but, as in the case of Achaian, only a portion of it, the other portion also being owned by Achaian, albeit a "different" Achaian for purposes of Membership in Omniglow.

On the basis of the foregoing, I conclude that under the terms of the LLC Agreement, Holland was permitted, and did, transfer its entire 30% Interest to Achaian, including that Interest's voting rights. Thus, Achaian is entitled to the declarato-

rights, which clearly would include members and non-members alike." *Id.* (emphasis in original). Thus, *Ault* is of no relevance to this case other than for the proposition, implicitly recognized by the Eighth Circuit, that the precise provisions of a given limited liability company agreement control the question of what interests a member can transfer.

**56.** That § 7.2's restriction on transferability applies only to a Person who is not yet admitted as a Member does not, contrary to Leemon's argument, render § 7.2 superfluous. For instance, § 7.2's written consent requirement would clearly apply to the counterfactual situation in which Holland, instead of assigning its 30% Interest to Achaian (an existing Member), assigned that Interest to a non-Member. In the case where Holland assigned its Interest to the non-Member, § 7.2 would require both Leemon and Achaian's written consent as Members.

**57.** 6 *Del. C.* § 18–704(a)(1) (emphasis added); *see also* 6 *Del. C.* § 18–301(b)(2) ("After the formation of a limited liability company, *a person is admitted as a member* of the limited liability company ... [i]n the case of an assignee of a limited liability company interest, as provided in § 18–704(a) of this title and *at the time provided in and upon compliance with the limited liability company agreement ....*") (emphasis added). The Uniform LLC Act and the Revised Uniform LLC Act are similarly focused on the specific terms of the LLC agreement. *See* Ribstein & Keatinge § 7:4 (citing Revised Uniform Limited Liability Company Act § 401 (2006)) (observing, under the Revised Uniform LLC Act, that "[a]fter formation of the LLC a person becomes a member *as provided in the operating agreement. ...*") (emphasis added); *see also* Uniform Limited Liability Company Act § 503 (1995) ("A transferee of a distributional interest may become a member of a limited liability company if and to the extent that the transferor gives the transferee the right *in accordance with authority described in the operating agreement* or all other members consent.") (emphasis added). Thus, Leemon's citation in its briefs to a case interpreting a materially different provision in a different LLC agreement is unconvincing. *See Rowe v. Voyager Hospicecare Holdings LLC,* 2010 WL 2502878, at *5 (Kan.Ct.App. June 18, 2010) (applying Delaware law) (holding, on the basis of a provision in an LLC agreement that provided that "[a]n assignee of any Units or other interests in the Company of a Member ... shall become a substituted Member ... *if and only if* the assignor gives the assignee such right *and the Board has granted its prior written consent to such assignment ...,*" that absent the Board's consent, the assignee did not become a Member, but instead only received the Units' corresponding economic interest) (emphasis added).

ry judgment it seeks, namely that Omniglow currently has two Members [58]— Leemon and Achaian—each holding an identical 50% Membership Interest. The sole remaining issue is therefore whether Achaian has pled facts sufficient to support its application for judicial dissolution under 6 Del. C. § 18–802.

This court, when considering an application for judicial dissolution of an LLC with two coequal managers, has on several prior occasions analogized the situation to an application made under 8 *Del. C.* § 273 for a judicial dissolution of a joint venture corporation.[59] Thus, in order for a plaintiff seeking judicial dissolution to survive a motion to dismiss, the plaintiff must plead the recognized "three prerequisites for a judicial order of dissolution [under § 273]: 1) the corporation must have two 50% stockholders, 2) those stockholders must be engaged in a joint venture, and 3) they must be unable to agree upon whether to discontinue the business or how to dispose of its assets."[60] Achaian has met its pleading burden.

First, as Achaian pleads, I have now found that Omniglow has two coequal 50% Interest owners, each with an equivalent corresponding 50% right to manage Omniglow.[61]

Second, Achaian adequately pleads that the two Members are engaged in a joint venture, Omniglow. Although Leemon argues in its briefs that Achaian purchased Holland's 30% Interest in an effort to purchase a "phony deadlock," [62] such extra-pleading factual contentions about Achaian's motivations, even if relevant, are inappropriate considerations at this procedural stage.[63]

Lastly, Achaian alleges that it and Leemon have been unable to agree on the management of Omniglow, and the LLC Agreement does not provide a "reasonable exit mechanism" or other provision to break the deadlock.[64] In fact, Achaian alleges that since wresting control of Omniglow in 2008, over the objection of both Achaian and Holland, Leemon has man-

---

**58.** Holland, upon the execution of the Purchase Agreement, ceased to be a Member of Omniglow. *See* 6 *Del. C.* § 18–702(b)(3) ("Unless otherwise provided in a limited liability company agreement: *[a] member ceases to be a member* and to have the power to exercise any rights or powers of a member *upon assignment of all of the member's limited liability company interest.*") (emphasis added).

**59.** *See, e.g., Vila v. BVWebTies,* 2010 WL 3866098, at *7 (Del.Ch. Oct.1, 2010); *Haley v. Talcott,* 864 A.2d 86, 94 (Del.Ch.2004) (analogizing to 8 *Del. C.* § 273 in the court's consideration of an application for judicial dissolution of an LLC with two coequal members); *see also In re Silver Leaf, L.L.C.,* 2005 WL 2045641, at *10 n. 82 (Del.Ch. Aug. 18, 2005) (citing *Haley* for the proposition that where an LLC has two deadlocked owners, the court should analogize to 8 *Del. C.* § 273); *Homer C. Gutchess 1998 Irrevocable Trust v. Gutchess Cos., LLC,* 2010 WL 718628, at *1 (Del.Ch. Feb. 22, 2010) (same).

**60.** *Haley,* 864 A.2d at 94.

**61.** Compl. ¶¶ 10–11.

**62.** Def. Op. Br. at 11; *see also id.* at 1, 7.

**63.** *See Malpiede v. Townson,* 780 A.2d 1075, 1082 (Del.2001) ("The complaint ordinarily defines the universe of facts from which the trial court may draw in ruling on a motion to dismiss.... [T]he Court of Chancery may not resolve material factual disputes; instead, the court is required to assume as true the well-pleaded allegations in the complaint.").

**64.** *E.g., Haley,* 864 A.2d at 88; *Silver Leaf,* 2005 WL 2045641, at *11 ("Silver Leaf is no longer able to carry on its business in a reasonably practicable manner. The vote of the members is deadlocked and the [LLC] Agreement provides no means around the deadlock....").

aged Omniglow to the exclusion of both Achaian and Holland, who together at all relevant times represented 50% of Omniglow's Membership Interests.[65]

Thus, Achaian has pled facts sufficient to give rise to the inference that the management of Omniglow is deadlocked, and I therefore deny Leemon's motion to dismiss.

## IV. *Conclusion*

For the foregoing reasons, I grant Achaian's request for declaratory judgment. Leemon's motion to dismiss is DENIED. IT IS SO ORDERED.