# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAHEEP GOYAL, derivatively on behalf of FSD BioSciences, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2021-0629-LWW |
| ANTHONY DURKACZ, ZEESHAN SAEED, and DONAL CARROLL, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| FSD BIOSCIENCES, INC. and FSD PHARMA, INC., | ) ) ) | |
| Nominal Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: February 8, 2022
Date Decided: May 5, 2022

Paul D. Brown and Joseph B. Cicero, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Roger A. Lane and Courtney Worcester, HOLLAND & KNIGHT LLP, Boston, Massachusetts; *Counsel for Plaintiff Maheep Goyal*

Larry R. Wood, Jr. and Brandon W. McCune, BLANK ROME LLP, Wilmington, Delaware; Jason A. Snyderman and John P. Wixted, BLANK ROME LLP, Philadelphia, Pennsylvania; Euripides D. Dalmanieras and James Fullmer, FOLEY HOAG LLP, Boston, Massachusetts; *Counsel for Defendants Anthony Durkacz, Zeeshan Saeed, and Donal Carroll and Nominal Defendants FSD BioSciences, Inc. and FSD Pharma, Inc.*

**WILL, Vice Chancellor**

A stockholder in an Ontario public corporation seeks to bring double derivative claims on behalf of the corporation's wholly-owned Delaware subsidiary. The nominal defendants and defendants have moved to dismiss this action on multiple grounds, including that the plaintiff lacks derivative standing. For the reasons explained below, I conclude that the plaintiff's standing to sue is determined by Ontario law and that he has failed to satisfy Ontario's derivative standing requirements. The motion to dismiss is therefore granted without prejudice to the plaintiff's ability to re-file his claims if the governing standing requirements are met.

## I. BACKGROUND

Unless otherwise noted, the following facts are based on the plaintiff's Verified Derivative Complaint.[1] Any additional facts considered in this Memorandum Opinion are not subject to reasonable dispute.

### A. FSD Pharma and Its Business

Nominal defendant FSD Pharma, Inc. ("Pharma") is a public corporation organized under the Ontario Business Corporations Act (the "OBCA") with its

---

[1] Verified Deriv. Compl. ("Compl.") (Dkt. 1); *see Elf Atochem N. Am, Inc. v. Jaffari*, 727 A.2d 286, 287 n.1 (Del. 1999) (confining review in the context of a Rule 12(b)(1) motion to the allegations of the complaint and the exhibits it attached); *Dover Hist. Soc'y. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) ("In ruling upon a Rule 12(b)(6) motion to dismiss, the relevant universe of facts are ordinarily confined to the allegations of the petition. Accordingly, as a general rule, factual matters outside the petition may not be considered in ruling upon a motion to dismiss.").

principal place of business and registered office in Toronto, Ontario, Canada.[2]  Its shares are traded on the Canadian Stock Exchange and the Nasdaq Capital Market.[3]

Pharma was founded as a medical cannabis company.[4]  In 2019, it shifted its focus to the research and development of drugs with anti-inflammatory properties.[5] As a part of that transition, Pharma purchased Prismic Pharmaceuticals Inc. and acquired the rights to an anti-inflammatory drug called FSD-201.[6]

In March 2020, Pharma formed FSD BioSciences, Inc. ("BioSciences"), a specialty biotech pharmaceutical company, to pursue the development of FSD-201.[7] BioSciences is a Delaware corporation and a wholly-owned subsidiary of Pharma.[8]

Shortly after BioSciences obtained approval from the Food and Drug Administration to launch a Phase 1 human study of FSD-201, the COVID-19 pandemic began to spread around the globe.[9]  Pharma informed the FDA that physicians and scientists in Italy were advocating for the use of drugs like FSD-201

---

[2] Compl. ¶¶ 7, 89.

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 23.

[5] *Id.* ¶ 24.

[6] *Id.* ¶¶ 24-28.

[7] *Id.* ¶ 34.

[8] *Id.* ¶ 6.

[9] *Id.* ¶¶ 35-37.

as a potential COVID-19 treatment.[10]  The FDA allowed Pharma to submit an application for the use of FSD-201 as a COVID-19 treatment and approved FSD-201 for a Phase 2 clinical trial.[11]  By the end of the first quarter of 2021, Pharma had raised approximately $75 million through a stock sale and $10 million by selling assets to support the development of FSD-201.[12]

## B.    The Potential Acquisition

In November 2020, defendants Anthony Durkacz and Zeeshan Saeed—both directors of Pharma and BioSciences—proposed that Pharma acquire Lucid Psycheceuticals Inc., a start-up focused on developing psychedelic compounds to treat mental illness.[13]  Durkacz and Saeed allegedly had personal financial interests in Lucid that they did not disclose.[14]  Pharma's then-Chief Executive Officer Dr. Raza Bokhari undertook due diligence into Lucid and recommended against a transaction.[15]  Pharma's board of directors declined to pursue Lucid.[16]

---

[10] *Id.* ¶ 38.

[11] *Id.* ¶¶ 39-40.

[12] *Id.* ¶ 45.

[13] *Id.* ¶¶ 8, 10, 51-52.

[14] *Id.* ¶¶ 57-58.

[15] *Id.* ¶¶ 53-55.

[16] *Id.* ¶ 59.

The plaintiff alleges that Durkacz, Saeed, and defendant Donald Carrol—a Pharma director and Chief Executive Officer of BioSciences—retaliated.[17] The defendants purportedly undertook a scheme to impair the clinical trials of FSD-201, harming Pharma and BioSciences while seeking to enrich themselves.[18]

## C. This Litigation

Plaintiff Maheep Goyal is a Pharma stockholder.[19] On July 20, 2021, Goyal filed a Verified Derivative Complaint alleging that defendants Durkacz, Saeed, and Carroll breached their fiduciary duties and wasted corporate assets.[20] Goyal asserts that he is pursuing his claims double derivatively on behalf of BioSciences.[21]

## II. ANALYSIS

Pharma and BioSciences have moved to dismiss the Complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6) on the grounds that Goyal lacks derivative standing and that the court otherwise lacks subject matter jurisdiction.[22] Alternatively, they argue that dismissal is appropriate under Rule 12(b)(2) because

---

[17] *Id.* ¶¶ 62-74.

[18] *E.g.*, *id.* ¶¶ 60-79, 96, 101.

[19] *Id.* ¶ 5.

[20] Dkt 1.

[21] Compl. ¶ 1; Pl.'s Answering Br. 1 (Dkt. 32).

[22] Dkt. 19.

the court lacks personal jurisdiction over Pharma.[23]  The individual defendants join in those arguments.[24]

My analysis begins and ends with the threshold question of derivative standing.[25]

### A.    Ontario Law on Derivative Standing Applies.

Because he is not a BioSciences stockholder, Goyal's ability to sue derivatively arises from his ownership of Pharma shares.  "Under Delaware law, a shareholder that holds shares only in a parent corporation must establish its standing to proceed derivatively at the parent level, in order to claim standing to enforce, on the parent's behalf, a claim belonging to that parent's Delaware subsidiary."[26]  The

---

[23] *Id.*  For a discussion of whether standing is properly challenged under Rule 12(b)(1) or 12(b)(6), see the Delaware Supreme Court's decision in *Appriva Shareholder Litigation Company, LLC v. EV3, Inc.*  937 A.2d 1275, 1285-86 (Del. 2007).  Goyal lacks standing to pursue this action regardless of which provision of Rule 12 applies.

[24] Dkt. 21.

[25] *El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1257 (Del. 2016) ("[T]he question of derivative standing is 'properly a threshold question that the Court may not avoid.'" (quoting *Gerber v. EPE Hldgs.*, 2013 WL 209658, at *12 (Del. Ch. Jan. 18, 2013))); *Dover Hist. Soc'y*, 838 A.2d at 1110 ("Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers.").

[26] *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1080 (Del. 2011); *Lambrecht v. O'Neal*, 3 A.3d 277, 282 (Del. 2010) ("[Where] the parent corporation owns the subsidiary's stock . . . and the plaintiff owns stock only in the parent . . . [a demand can] only be made—and a derivative action [can] only be brought— at the parent, not the subsidiary, level.").

stockholder's standing to sue derivatively is governed by the derivative standing rules that apply at the parent level—here, Pharma.[27]

As confirmed by the Delaware Supreme Court in *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, the right to sue derivatively on behalf of a corporation is an internal affair of the corporation "that falls within the scope of the internal affairs doctrine."[28] That choice of law principle requires, in this context, that Delaware courts apply the derivative standing rules "of the jurisdiction of incorporation of the entity in which the plaintiff owns shares."[29]

Pharma is incorporated under the laws of Ontario. Thus, Goyal must satisfy Ontario's derivative standing requirements in order to sue—on Pharma's behalf—to enforce BioSciences' claims against the defendants.

---

[27] *Sagarra*, 34 A.3d at 1080-81 ("[The plaintiff's] standing to sue derivatively, including its presuit demand obligations, is governed by the derivative standing rules that apply at the parent . . . level.").

[28] *Id.* at 1082; *see McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987) ("Delaware's well established conflict of laws principles require that the laws of the jurisdiction of incorporation . . . govern this dispute involving [the internal affairs of the corporation].").

[29] *Id.* at 1081; *see id.* (holding that a stockholder in a Spanish corporation seeking to sue derivatively on behalf of the Spanish corporation's wholly-owned Delaware subsidiary was required to satisfy Spanish law's derivative standing requirements); *Microsoft Corp. v. Vadem, Ltd.*, 2012 WL 1564155 (Del. Ch. Apr. 27, 2012) (holding that a stockholder lacked standing to pursue claims on behalf of a British Virgin Islands corporation because he failed to meet the derivative standing requirements under the law of the British Virgin Islands), *aff'd*, 62 A.3d 1224 (Del. 2012).

**B.**     **Goyal Did Not Comply with Ontario's Derivative Standing Requirements.**

The defendants assert that Goyal lacks derivative standing because he failed to apply to an Ontario court for leave before filing this action, as required by Ontario law. Unlike Delaware law, which treats derivative actions as "creature[s] of equity," Ontario law regards derivative actions as creatures of statute.[30] The right to bring derivative litigation under Ontario law derives exclusively from the OBCA.[31]

Ontario law provides that "a shareholder cannot sue for a wrong done to the corporation" other than "by way of derivative action, for which leave is required."[32]

---

[30] *Rea v. Wildeboer* (2015), 126 O.R. (3d) 178, 182 (Can. Ont. C.A.) (describing how Canadian provisional and federal legislatures tempered the traditional rule that stockholders lacked "a personal cause of action for a wrong done to the corporation" by creating a statutory right for shareholders to bring derivative actions); *Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008) ("As 'a creature of equity,' the derivative action [under Delaware law] has generally served as a vehicle to enforce a corporate right.").

[31] *See Farnham v. Fingold* (1973), 2 O.R. 132 (Can. Ont. C.A.) ("[T]he very broad language of [the OBCA] embraces all causes of action under any statute or in law or in equity, that a shareholder may sue for on behalf of a corporation. All forms of derivative actions purporting to be brought on behalf of and for the benefit of the corporation come within it, and therefore [the requirement that a shareholder must obtain leave of the court to bring a derivative action] applies to all such actions.").

[32] *1186708 Ontario Inc. v. Gerstein* (2016), 264 A.C.W.S (3d) 776, para. 23 (Can. Ont. Super. Ct.); *see Hevey v. Wonderland Com.* (2021), 154 O.R. (3d) 86, 94-95 (Can. Ont. Super. Ct.) ("Derivative actions under s. 246 of the OBCA are available, with leave of the court, to assert claims to recover damages for wrongs done to a corporation where the directors and/or officers of the corporation do not intend to pursue those claims."); *Melnyk v Acerus Pharm. Corp.* (2017), 277 A.C.W.S (3d) 747, para. 13 (Can. Ont. Super. Ct.) (explaining that claims belonging to an Ontario corporation "must be pursued by way of a derivative action with leave of the court").

The process for seeking leave to pursue a derivative action "on behalf of a corporation or any of its subsidiaries" is described in Section 246 of the OBCA:

> Subject to section (2), a complainant may apply to the court for leave to bring an action in the name and on behalf of a corporation or any of its subsidiaries, or intervene in an action to which any such body corporate is a party, for the purpose of prosecuting, defending or discontinuing the action on behalf of the body corporate.[33]

The word "court" is defined in the OCBA to mean the Ontario Superior Court of Justice.[34]

That procedure is a "preliminary step before an action can be commenced."[35]

To obtain leave, the applicant must demonstrate to the Ontario court that:

(a) he or she is a complainant within the definition contained in section 245 [of the OCBA];

(b) the directors of the corporation will not bring, diligently prosecute or defend or discontinue the action;

(c) the complainant is acting in good faith; [and]

(d) the action appears to be in the interest of the corporation.[36]

---

[33] Ontario Business Corporations Act R.S.O. 1990, c. B.16 § 246(1) (Can.).

[34] *Id.* § 1(1).

[35] *Jennings v. Bernstein* (2001), 11 B.L.R (3d) 259, para. 29 (Can. Ont. Super. Ct.) ("Section 246(1) [of the OBCA] established a process that a complainant must engage in before bringing an action in the name of a particular corporation. This process is not the action as such but a preliminary step before an action can be commenced.").

[36] *Id.* para. 33; *see 1939163 Ontario Ltd. v. Greenhow* (2020), 153 O.R. (3d) 418, para. 56 (Can. Ont. Super. Ct.) ("A shareholder cannot sue for a wrong done to the corporation. Pursuant to s. 246(1) of the Ontario Business Corporations Act, however, with leave of the

Goyal admittedly did not apply to the Ontario Superior Court of Justice for leave to pursue litigation on behalf of Pharma. It follows that he lacks standing to pursue claims on Pharma's behalf.[37] He resists the conclusion that dismissal is appropriate by contending that his claims are brought to remedy harms to BioSciences (not Pharma).[38] There are, however, several flaws in his argument.

First, a review of the Complaint makes plain that Goyal is attempting to pursue claims concerning both entities. The Complaint is replete with allegations that the individual defendants harmed Pharma by pursuing a deal with Lucid.[39] For example, Goyal alleges that the individual defendants disregarded the interests of Pharma and BioSciences, causing "sustained severe damage" to both entities.[40] His request for relief includes a demand for money damages "for all losses and damages suffered by FSD BioSciences and FSD Pharma."[41]

---

court, a shareholder can bring a derivative action and sue in the name and on behalf of a corporation for a wrong done to a corporation.").

[37] *Vadem*, 2012 WL 1564155, at *6 (dismissing derivative claims for lack of standing because the plaintiff did not first seek leave from the British Virgin Islands high court); *see also Gutstadt v. Nat. Fin. P'rs Corp.*, 2013 WL 5859550 (N.Y. Sup. Ct. Oct. 22, 2013) (dismissing claims brought on behalf of an Ontario corporation because the plaintiff did "not obtain[] leave from the Ontario Superior Court of Justice to bring a derivative action").

[38] Goyal also argues that this court, rather than an Ontario court, has subject matter jurisdiction because the internal affairs of a Delaware corporation are concerned. Because I dismiss this action for lack of standing, I do not reach the question of whether this court has subject matter jurisdiction to hear the underlying claims.

[39] *See* Compl. ¶¶ 52-59, 62, 67, 69, 71, 73, 84, 96.

[40] *Id.* ¶¶ 96-97, 101-02, 107.

[41] *Id.* ¶ 107.

9

More importantly, Goyal cannot bypass the requirements of the OBCA by arguing that he is only advancing claims to redress purported harms to BioSciences. Goyal relies on Section 2(1) of the OBCA, which he asserts limits the scope of Section 246 to Ontario corporations:

> [The OBCA], except where it is otherwise expressly provided, applies to every body corporate with share capital (a) incorporated by or under a general or special Act of the Parliament of the former Province of Upper Canada; (b) incorporated by or under a general or special Act of the Parliament of the former Province of Canada that has its registered office and carries on business in Ontario; or (c) incorporated by or under a general or special Act of the Legislature.[42]

But even if Goyal is correct that the OBCA does not apply to foreign subsidiaries like BioSciences, he would lack derivative standing to maintain his double derivative claims in this court.[43] Goyal is not a stockholder in a Delaware

---

[42] Ontario Business Corporations Act R.S.O. 1990, c. B.16 § 2(1) (Can.).

[43] Rather than aid his position, the Canadian case law cited by Goyal indicates that a stockholder in a foreign corporation should apply to bring derivative claims in the corporation's home jurisdiction. In *Voyage Company Industries v. Craster*, the British Columbia Supreme Court found that a stockholder in a Yukon Territory corporation was obligated to pursue his stockholder oppression claims in a Yukon Territory court. [1998] B.C.J. No. 1884 (Can. B.C.S.C.) (QL). Likewise, in *Cira v. Rico Resources*, an Ontario court declined to exercise jurisdiction over a dispute between stockholders in a Utah corporation—the entity in which the stockholders directly owned stock. (2004), 41 B.L.R (3d) 206, para. 7 (Can. Ont. Super. Ct.). And in *Axis v. Management Inc. v. Alsager*, a Saskatchewan court held that it did not have the power under the Saskatchewan Business Corporations Act to grant an application allowing a stockholder in a Texas corporation to bring a single derivative action. (2000), 197 Sask. R. 234, para. 11 (Can. Sask. Q.B.). None of the cases he relies on are relevant to determining the derivative standing requirements that Goyal must meet to bring claims on Pharma's behalf.

corporation. He owns shares in Pharma, an entity organized under the laws of Ontario. As discussed above, that jurisdiction's rules on derivative standing apply.

Delaware law does not provide Goyal with an avenue to press his claims at the subsidiary level without first satisfying the derivative standing requirements that apply to Pharma.[44] He has not obtained the requisite leave of court to step into the shoes of Pharma for purposes of the present action. Thus, he lacks standing to proceed.

One issue remains unresolved: whether the Ontario court would authorize a derivative action involving a Delaware subsidiary. The parties debate whether the language of Section 246(1) providing the Ontario court with the authority to preside over a derivative action "in the name and on behalf of a corporation or *any of its subsidiaries*" should be read to include foreign subsidiaries.[45] Neither party has cited Canadian precedent on point and this court's research has turned up none; perhaps it is a matter of first impression.

I decline to wade into a matter best decided by the courts of that jurisdiction. For this court to opine on the internal affairs of a Canadian corporation just because

---

[44] *See, e.g.*, *supra* notes 26, 27.

[45] Ontario Business Corporations Act R.S.O. 1990, c. B.16 § 246(a) (Can.) (emphasis added).

11

it has a Delaware entity in its corporate structure would do little to further a legitimate Delaware interest.[46]

## III. CONCLUSION

For the reasons explained above, Goyal lacks standing to bring his claims. The defendants' motion to dismiss is granted and Goyal's claims are dismissed without prejudice. If Goyal seeks and obtains leave of the Ontario court to pursue his double derivative claims, he may refile this action.[47]

---

[46] *Sagarra*, 34 A.3d at 1083; *see Kostolany v. Davis*, 1995 WL 662683, at *3 (Del. Ch. Nov. 7, 1995) ("Delaware does have a strong interest in protecting minority stockholders of Delaware corporation. However, plaintiff is a stockholder of the Dutch parent, not of the Delaware subsidiaries."). The *National Trust Company v. Ebro Irrigation & Power* decision cited by Goyal is not to the contrary. (1954), 3 D.L.R 326 (Can. Ont. Sup. Ct.). There, the Ontario Supreme Court held that the internal affairs of a Canadian subsidiary of a Spanish holding corporation were not subject to Spanish jurisdiction under Spanish law.

[47] *See Vadem*, 2012 WL 1564155, at *6 (dismissing derivative claims without prejudice so that the plaintiff could refile them if leave of the British Virgin Islands court was obtained).